UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHICAGO TITLE INS. CO.,** Plaintiff, v. **SUBURBAN TITLE & ABSTRACT, INC.,** *et al.*, Defendants. | Civ. No. 2:17-10486 (WJM) **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Chicago Title Insurance Company ("Plaintiff") brings this action against Defendants Suburban Title & Abstract, Inc. ("Suburban"), Jeannet Pavez ("Pavez"), Richard Renna ("Renna"), and the Estate of John DiMaria Jr. ("DiMaria" or the "Estate" and collectively, "Defendants") over Defendants' alleged failure to perform its contractual obligations as to three real estate transactions.[1] Before the Court is the Estate's motion to dismiss. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons below, the Estate's motion is **GRANTED**. Plaintiff's Amended Complaint (the "Complaint") is **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

The Court accepts as true the factual allegations contained in the complaint, considers any "document integral to or explicitly relied upon in the complaint," and draws all reasonable inferences therefrom in favor of the plaintiff. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

In 1993, Plaintiff and Suburban entered into a contract (the "Agreement") whereby Suburban processed title insurance applications on Plaintiff's behalf. Am. Compl. ¶¶ 8–9, ECF No. 16 [hereinafter "Compl."]. Per the Agreement, Suburban would indemnify and hold Plaintiff harmless for losses arising from any improper closing Suburban performed. *Id.* ¶ 10. Examples included a loss or misapplication of customer funds or documents and a failure to follow escrow or closing instructions. *Id.*

---

[1] During the pendency of this motion, Plaintiff stipulated to dismissing Suburban and Renna with prejudice. ECF No. 32.

At or around the same time in 1993, Defendants Renna and DiMaria executed a personal guaranty (the "Guaranty"). *Id.* ¶ 11. Under the Guaranty, Renna and DiMaria agreed to indemnify Plaintiff for any losses related to Suburban's performance obligations under the Agreement. *Id.* ¶ 12.

This action stems from three real estate transactions involving Plaintiff, Defendants, and AmTrust Bank (the non-party "Bank"), in which Plaintiff suffered losses. In each instance, the Bank issued and funded the borrowers' loans on the condition that each borrower brought a specified down payment of funds at closing. *Id.* ¶¶ 16, 25, 33. As the settlement agent, before the closing occurred, Suburban issued the Bank a closing service letter. *Id.* ¶¶ 18, 27, 35. The letters indicated that if Suburban failed to comply with the Bank's closing instructions or otherwise committed fraud or misapplied funds, then Plaintiff could be liable for any actual loss the Bank suffered. *Id.*

As to what transpired next, Plaintiff relies entirely on a pleading filed in a separate civil action that was before this Court. In the other matter, the Federal Deposit Insurance Corporation ("FDIC"), acting as the Bank's Receiver, filed suit against Plaintiff. *See FDIC v. Chicago Title Ins. Co.*, Civ. No. 15-8400-WJM-MF, ECF No. 1 [hereinafter the "FDIC Action" or "FDIC Complaint"]. No adjudication on the merits took place in the FDIC Action, such as through dispositive motion practice. Instead, the parties settled and stipulated to dismissing the action with prejudice. *See id.*, ECF Nos. 65, 66.

Based on the FDIC Complaint, Plaintiff alleges Suburban and Pavez violated the Bank's closing instructions. Apparently quoting from the FDIC Complaint without attribution, Plaintiff claims Suburban and Pavez closed the relevant transactions even though neither received the required down payment of funds nor told the Bank about the missing funds. Compl. ¶¶ 20, 28, 36. Further, Suburban and Pavez issued falsified and inaccurate Federal Housing and Urban Development ("HUD") settlement documents. *Id.* ¶¶ 21, 29, 37. Thus, Suburban violated the Agreement and the Estate's failure to indemnify Plaintiff under the Guaranty's terms constituted breach.[2]

The Estate now moves to dismiss on two grounds: (1) the Court lacks personal jurisdiction because the Estate is a South Carolina entity, having never conducted any business in New Jersey, and (2) the applicable statute of limitations under South Carolina law makes Plaintiff's claims time-barred. *See* Def.'s Br. at 1–4.

Plaintiff opposes, arguing DiMaria's ownership interest in Suburban permits this Court to exercise jurisdiction over the Estate. *See* Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") 7–10, ECF 29. Plaintiff next argues the claims are timely because the causes of action accrued either when the FDIC filed suit or when Plaintiff made a loss payment to settle the FDIC Action. *Id.* at 11. In reply, the Estate reiterates its original arguments, adding three additional points. First, there is no Estate to sue because DiMaria's will was never probated. Second, even if DiMaria's death created an Estate, the statute of limitations stills bars

---

[2] DiMaria died on January 31, 2015. Compl. ¶ 13; Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") 2, ECF No. 28-2.

Plaintiff's claims. Third, any shares of Suburban stock DiMaria owned "were pledges back to Suburban as part of another lawsuit" and "were never part of any estate . . . ." *See* Decl. of Robert J. Greenbaum, Esq. 1–2, ECF No. 30.

## II. LEGAL STANDARD

Absent a court hearing, a plaintiff bears the burden to make out a prima facie case establishing personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Like in a Rule 12(b)(6) setting, a court must "accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing N.J. Court Rule 4:4–4(c)). That means parties with "constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citation omitted).

## III. DISCUSSION

As an initial matter, Plaintiff argues its Complaint is "entitled to the full benefit of the liberal standard governing motions to dismiss." Pl.'s Mem. of Law at 2. That conclusion misconstrues the current state of the law. "[T]he pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Plaintiff denies liability as to the FDIC Complaint's allegations but presumes the Court can treat those same allegations as true. *See* Compl. ¶ 39. Not so. Although a court may take judicial notice of court records in another case, it cannot do so for the facts recited therein. *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) (citing Fed. R. Evid. 201(b)).

Throughout the Complaint, Plaintiff injects factual allegations found in the FDIC Action to support its claims against the Estate. Specifically, that Suburban wrongfully closed the transactions and then issued inaccurate HUD documents. And it was those events that triggered Plaintiff's loss payment in the FDIC Action. *See* Compl. ¶¶ 20–22, 28–30, 36–38. The heart of Plaintiff's damages claims stems from its involvement in the FDIC Action. Yet, Plaintiff's damages claim represents "no more than conclusions[]" and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. No factfinder ever concluded the FDIC Complaint's allegations were true, whether at trial or through dispositive Rule 12 or Rule 56 motion practice. Absent the formal introduction of evidence, Plaintiff cannot substitute the FDIC Complaint or its alleged loss payment to settle the FDIC Action as pleaded facts essential to supports its claims here.

And for the first time in its motion papers, Plaintiff alleges DiMaria held an ownership stake in Suburban. Pl.'s Mem. at 8, 9. This conclusory statement runs contrary to well-settled law "that the complaint may not be amended by the briefs in opposition to a motion

to dismiss." *Commonwealth of Pa. v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations and quotations omitted). Thus, the Court may not consider new allegations made in Plaintiff's opposition papers. With no apparent link between DiMaria and Suburban, there lacks the jurisdictional hook to hale DiMaria into this forum.

That said, if a complaint is vulnerable to dismissal and regardless of whether the plaintiff sought leave to amend, "a district court must permit a curative amendment, unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Based on the Complaint's allegations and in reviewing Plaintiff's opposition papers, the Court will permit Plaintiff an opportunity to replead the claims against the Estate.

## IV. CONCLUSION

For the foregoing reasons, the Estate's motion is **GRANTED**. Plaintiff's Breach of Guaranty and Indemnification claims alleged in Counts II and V against the Estate are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is **GRANTED** leave to file a Second Amended Complaint reasserting the same two claims within fourteen (14) days. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: August 15, 2018**